UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00150-GNS-LLK


WILLIAM STEWART, JR.; MARK STEWART;
KATHRYN RUSSELL; and CAROLYN BURNETT                    PLAINTIFFS


v.


U.S. DEPARTMENT OF LABOR                                DEFENDANT


## MEMORANDUM OPINION AND ORDER

William Stewart, Jr., Mark Stewart, Kathryn Russell, and Carolyn Burnett (collectively, "Plaintiffs") bring this action for judicial review of the Department of Labor's ("DOL") denial of their claims for benefits under Parts B and E of the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. §§ 7384-7385s-16. For the reasons set forth below, Plaintiffs' claims are **DENIED**.

## I.      BACKGROUND

### A.      Statutory and Regulatory Background

The EEOICPA provides benefits to covered employees who die or suffer from illnesses as a result of exposure to toxic substances in the course of their work for the Department of Energy ("DOE") and its predecessor agencies. Under Part B of the Act, a "covered employee" or his eligible survivor is entitled to a lump sum payment of $150,000.00 if he develops an occupational illness. 42 U.S.C. § 7384s(a)(1); *id.* 7384l(7), (15). Part E of the EEOICPA provides additional compensation to certain DOE contractor employees or their eligible survivors for permanent impairment and/or wage-loss due to a covered illness. *Id.* § 7385s(2).

Under both Parts, an employee's eligible survivors include his surviving spouse, and, if there is no surviving spouse, his children. *Id.* §§ 7384s(e)(1)(A)-(B), 7385s-3(d)(2)(A).

## 1. *Filing a Claim for Survivor Benefits*

In order to achieve survivor benefits under Parts B or E of the Act, a claimant must file a claim with the DOL's Office of Workers' Compensation Programs ("OWCP") demonstrating that he is an eligible survivor of an individual who died as a result of an occupational illness—such as "chronic beryllium disease" ("CBD") or cancer—that the individual developed due to exposure to beryllium or radiation while employed or present at a DOE facility. *Id.* §§ 7384s(a)(1), 7384l(7), 7384l(8), 7384l(9), 7384l(15); 20 C.F.R. §§ 30.100, -.101. To establish a claim for CBD under Part B, the claimant must satisfy certain statutory criteria:

> (A) For diagnoses on or after January 1, 1993, beryllium sensitivity (as established [by abnormal lymphocyte proliferation test performed on either blood or lung lavage cells]) together with lung pathology consistent with [CBD], including—
> > (i) a lung biopsy showing granulomas or a lymphocytic process consistent with [CBD]
> > (ii) a computerized axial tomography scan showing changes consistent with [CBD]; or
> > (iii) pulmonary function or exercise testing showing pulmonary deficits consistent with [CBD].
>
> (B) For diagnoses before January 1, 1993, the presence of—
> > (i) occupational or environmental history, or epidemiologic evidence of beryllium exposure; and
> > (ii) any three of the following criteria:
> > > (I) Characteristic chest radiographic (or computed tomography (CT)) abnormalities.
> > > (II) Restrictive or obstructive lung physiology testing or diffusing lung capacity defect.
> > > (III) Lung pathology consistent with [CBD].
> > > (IV) Clinical course consistent with a chronic respiratory disorder.
> > > (V) Immunologic tests showing beryllium sensitivity (skin patch test or beryllium blood test preferred).

42 U.S.C § 7384l(13). To prevail on a claim for cancer under Part B, the claimant must convince the OWCP that the decedent's cancer was "at least as likely as not related to" his employment at a DOE facility. *Id.* § 7384n(b). In making this determination, the OWCP relies on estimations provided by the National Institution for Occupational Safety and Health ("NIOSH") regarding the extent of the decedent's work-related exposure to radiation. 20 C.F.R. § 30.115.

A claimant may receive additional survivor benefits under Part E if he shows that he is an eligible survivor of a DOE contractor employee who suffered from a "covered illness." *Id.* § 7385s(2); 20 C.F.R. §§ 30.100, -.101. Under Part E, a covered illness is an illness or death resulting from exposure to a toxic substance. 42 U.S.C. § 7385s(2).

### 2. *Reviewing a Claim*

After submitting the documentation necessary to develop the claim, the OWCP district office issues a recommended decision informing the claimant of its recommended findings of fact and conclusions of law. 20 C.F.R. §§ 30.300, -.306. Thereafter, the claimant may file written objections to the recommended decision with the Final Adjudication Branch ("FAB"). *Id.* § 30.310. The FAB will consider any objections and issue a final decision on the claim. *Id.* §§ 30.300, -.316. The claimant then has 30 days to request that the FAB reconsider its decision. *Id.* § 30.319(a). "If the FAB denies the request for reconsideration, the FAB's original decision is considered 'final' on the date the request is denied . . . ." *Id.* § 30.319(c)(2).

At any time thereafter, a claimant may file a reopening request with the Director of the OWCP's Division of Energy Employees Occupational Illness Compensation based on new evidence demonstrating covered employment or exposure to a toxic substance. *Id.* § 30.320(b). If the Director decides that the matter raised by the request is material to the claim, the Director will reopen the claim and return it to the district office for further development. *Id.* §

30.320(b)(1). The Director's decision whether to reopen a claim is discretionary and not subject to administrative review; in addition, the decision to deny a reopening request is not subject to judicial review when based on the fact that the claimant submitted no new evidence. *Id.* § 30.320(c); *Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 636 (6th Cir. 2016).

A claimant may also seek judicial review of the FAB's final decision denying his claim. Because Part B of the EEOICPA contains no provisions allowing or precluding judicial review, district courts use the Administrative Procedures Act's ("APA") standards and procedures—including its statute of limitations period—in reviewing Part B claims. *See Featherston v. Dep't of Labor*, No. 5:14-CV-00132-GNS-LLK, 2016 WL 4746211, at *2 (W.D. Ky. Sept. 12, 2016). A claimant therefore has six years to file a petition challenging the FAB's denial of a Part B claim. *See* 28 U.S.C. § 2401(a). To properly challenge the FAB's denial of a Part E claim, however, a claimant must seek judicial review "within 60 days after the date on which [the] final decision was issued . . . ." 42 U.S.C. § 7385s-6(a); *see, e.g.*, *Jeffords v. U.S. Dep't of Labor*, No. 5:14-CV-00165-GNS-LLK, 2016 WL 2745865, at *2 (W.D. Ky. May 11, 2016).

### B. <u>Factual Background</u>

William Stewart ("Stewart") worked at the Paducah Gaseous Diffusion Plant ("PGDP") in Paducah, Kentucky, from June 11, 1951 until March 13, 1953. (Administrative R. 609-612 [hereinafter AR]). He died on November 20, 1989. (AR 656).

Between 2004 and 2005, Plaintiffs—all of whom are Stewarts' children—filed claims for benefits under Part B of the EEOICPA, asserting that Stewart developed lung cancer and chronic obstructive pulmonary disease (COPD) as a result of his employment at the PDGP. (AR 577-79, 856-63). To support these claims, Plaintiffs submitted: (1) a report noting "a calcified granuloma in the right base" of Stewart's lungs; (2) a chest x-ray report indicating that Stewart

had a "normal chest"; (3) a doctor's consultation report showing that the doctor suspected that Stewart had COPD; (4) an x-ray report indicating that a scan of Stewart's chest showed a "4 cm. peripheral right lower lobe nodule"; and (5) a pathology report diagnosing Stewart with undifferentiated small cell carcinoma. (AR 748, 752, 760, 765, 801, 834).

The FAB reviewed and denied Plaintiffs' Part B cancer claim on two separate occasions. The FAB first denied this claim based on the NIOSH's conclusion that there was a 3.41% chance that Stewart's exposure to radiation at the PGDP caused his cancer.[1] (AR 393-95, 537-40, 551-61). About a year and a half later, the District Director issued an order reopening Plaintiffs' Part B cancer claim so that the NIOSH could recalculate the likelihood that Stewart developed cancer due to his employment at the PGDP. (AR 368-83). Upon reviewing Stewart's medical history a second time, the NIOSH determined that there was a 1.82% chance that his employment at the PGDP caused his cancer. (AR 337-54). As a result, the FAB issued a final decision rejecting Plaintiffs' Part B cancer claim on August 27, 2008. (AR 316-20).

Thereafter, Plaintiffs filed new claims for survivor benefits under Parts B and E based on Stewart's alleged diagnosis of CBD. (AR 293-94). Plaintiffs did not submit new medical evidence substantiating these claims, but instead relied on the documents they produced in support of their Part B cancer claim. (AR 252-53, 257-58).

The district office recommended the denial of Plaintiffs' claims for benefits under Parts B and E based on CBD, and, after hearing objections to that recommendation, the FAB agreed. (AR 61-68, 95-99, 230, 246-47). With respect to Plaintiffs' Part B claim, the FAB concluded that the medical evidence established only two of required criteria—restrictive or obstructive lung physiology testing (Criterion II) and a clinical course consistent with a chronic respiratory

---

[1] The FAB issued its first final decision on March 24, 2006. (AR 393-95).

disorder (Criterion IV). (AR 64-66). In reaching this conclusion, the FAB explained that: (1) neither Stewart's chest x-rays nor CT scans showed that he had the abnormalities necessary to establish Criterion I; and (2) the pathology report diagnosing him with small cell carcinoma failed to satisfy Criterion III because it did not include findings consistent with CBD. (AR 64-66). The FAB also denied Plaintiffs' Part E claim. (AR 67-68). Plaintiffs sought reconsideration, but the FAB denied that request on March 9, 2012. (AR 15-17, 29-54).

On April 6, 2014, Plaintiffs asked the District Director to reopen their CBD claims "based on [Stewart's] exposure to toxic substance(s) beryllium oxide, beryllium sulfate, and welding fumes listed in the [PGDP] Site Exposure Matrices ("SEM") . . . ." (AR 8-10). The District Director denied the request because, given that the potential for toxic exposure was not at issue in either the Part B or Part E claims, Plaintiffs had failed to submit any "evidence that is new and/or compelling to the outcome of the claim." (AR 5).

A few months later, Plaintiffs filed a petition in this Court seeking judicial review of all "FAB decisions in their entirety." (Compl. ¶¶ 1, 27, DN 1). In their opening brief, however, Plaintiffs argued only that this Court should review: (1) the District Director's decision denying their April 6, 2014, reopening request; and (2) the FAB's decision rejecting their claims benefits under Parts B and E based on Stewart's alleged diagnosis of CBD. (Pls.' Br. 6-23, DN 30). As a result, the Court will only review the two aforementioned decisions.[2]

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331 because a federal question under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, is presented.

---

[2] Because the parties agreed to submit their arguments in an appellate manner, Plaintiffs have waived all claims for judicial review that they failed to raise in their opening brief. (*See* Stipulation Br. Schedule 1-2, DN 17); *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (noting that claims not raised in opening brief are waived).

# III.    DISCUSSION

## A.    Reopening Request

Plaintiffs seek review of the District Director's decision declining to reopen the FAB's earlier decisions denying their claims for CBD under Parts B and E. (Pls.' Br. 18-19). Requests to reopen EEOICPA claims are reviewable under certain circumstances. In *Berry v. U.S. Department of Labor*, the Sixth Circuit held that requests to reopen Part B claims based on new evidence are subject to judicial review, whereas those based on material error are not. *Berry*, 832 F.3d at 636. This Court has since held that the rule of *Berry* applies to requests to reopen Part E claims. *See Featherston*, 2016 WL 4746211, at *5.

The Court cannot review the District Director's decision denying Plaintiffs' reopening request. The only document Plaintiffs attached to their reopening request was a one-page excerpt from the SEM identifying toxic substances that can cause CBD. (AR 10). The FAB, however, did not deny Plaintiffs' CBD claims on the ground that they failed to establish that Stewart was exposed to toxic substances; rather, the FAB denied those claims because Plaintiffs did not present medical evidence sufficient to establish that he contracted CBD. (AR 17, 67-68). As a result, the SEM Plaintiffs submitted with their reopening request was not new evidence. *See Featherston*, 2016 WL 4746211, at *5. Thus, Plaintiffs seek judicial review of the District Director's decision on the ground that he or she committed material error. Under *Berry*, the denial of such reopening requests is not reviewable.

## B.    FAB's March 9, 2012 Decision Denying Part E Claim for CBD

Similarly, the FAB's final decision denying Plaintiffs' claim for Part E benefits is not reviewable. Under the EEOICPA, final decisions of the DOL are reviewable as follows:

> A person adversely affected by a final decision of the Secretary under [Part E] may review that order in the United States district court . . . by filing in such court

within 60 days after the date on which that final decision was issued a written petition praying that such decision be modified or set aside. . . . Upon such filing, the court shall have jurisdiction over the proceeding and shall have the power to affirm, modify, or set aside, in whole or in part, such decision.

42 U.S.C. § 7385s-6(a). "[C]ompliance with the 60-day filing deadline . . . is a jurisdictional prerequisite for judicial review of [FAB] decisions denying claims under Part E." *See Jeffords*, 2016 WL 2745865, at *2 (citation omitted).

FAB denied Plaintiffs' Part E CBD claim on December 2, 2011, and that decision became final when the District Director declined to reopen the claim on March 9, 2012. (AR 15-17, 61-68). When Plaintiffs petitioned the Court for judicial review of their Part E claim on August 6, 2014, their Plaintiffs' request for review fell far outside the 60-day filing limit. Thus, this Court lacks jurisdiction to review Plaintiffs' Part E claim.

## C.     FAB's March 9, 2012 Decision Denying Part B Claim for CBD

The FAB's decision denying Plaintiffs' Part B claim for CBD is reviewable. Because Part B of the EEOICPA does not contain any provisions either allowing for or precluding judicial review, courts use the APA's "arbitrary and capricious" standard when reviewing the FAB's final decisions. *See, e.g.*, *Freeman v. U.S. Dep't of Labor*, 653 F. App'x 405, 409 (6th Cir. 2016) (citations omitted). Arbitrary-and-capricious review is deferential. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007). Claimants contesting an agency's decision must "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *McDonald Welding & Mach. Co. v. Webb*, 829 F.2d 593, 595 (6th Cir. 1987) (citations omitted); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("[A]n agency['s] [decision is] arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, [or] entirely failed to consider an important aspect of the problem . . . .").

The FAB's decision denying Plaintiffs' Part B claim for CBD is neither arbitrary nor capricious. Prior to analyzing that claim, the district office informed Plaintiffs of the statutory requirements that it (and the FAB) would use to evaluate whether Stewart's medical history established a diagnosis of CBD and asked Plaintiffs to submit evidence substantiating their claim. (AR 252-53, 257-58). Plaintiffs never responded, so the district office analyzed the record medical evidence and issued a recommendation indicating that Plaintiffs had failed to prove that Stewart had contracted CBD. (AR 245-47). Thereafter, the FAB heard Plaintiffs' objections to the district office's recommendation, but deemed them meritless because none of the evidence revealed lung abnormalities or other findings consistent with a diagnosis of CBD. (AR 64-66). Throughout its analysis, the FAB applied the statutory criteria set forth at 42 U.S.C. § 7384l(13)(B)(ii)—i.e., the correct legal standard. (AR 64). Nothing about the FAB's decision is arbitrary or capricious. *See Freeman*, 653 F. App'x at 410-11 (explaining that an agency's decision denying a claim on the ground that the claimant "was unable to provide evidence" supporting it is not arbitrary or capricious).

Seeking to avoid this result, Plaintiffs argue that Stewart's medical records—which show that he had COPD, bronchial congestion, atherosclerosis and a mass/lesion in his right lung (which was ultimately diagnosed as cancer)—"identify and diagnose him with [Criterion] I conditions." (Pls.' Br. 13-14). But the FAB reviewed those records and concluded that none of them showed findings consistent with a diagnosis of CBD. (AR 16-17, 65). Consequently, Plaintiffs appear to be inviting the Court to reinterpret the medical evidence and substitute its own judgment for that of the FAB's. (Pls.' Br. 13-14). The Court cannot oblige. *See Freeman*, 653 F. App'x at 410 (citations omitted) (noting that a court engaging in arbitrary and capricious review cannot substitute its own judgment for that of the agency).

## IV.   <u>CONCLUSION</u>

In sum, neither the District Director's decision denying Plaintiffs' reopening request nor the FAB's decision rejecting Plaintiffs' Part E claim are reviewable, and the only reviewable decision—the FAB's decision denying Plaintiffs' Part B claim—is not arbitrary or capricious. This case is therefore **DISMISSED**, and the Clerk shall strike it from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**

March 27, 2018

cc:   counsel of record